IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIO MITCHELL, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>COOK COUNTY SHERIFF THOMAS DART, in )<br>his official capacity, OFFICER )<br>THEOFANOPOULOS, Star #80848, in his )<br>individual capacity, and COOK COUNTY, )<br>)<br>Defendants. ) | No. 10 C 4873<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rio Mitchell, a pretrial detainee at Cook County Jail ("the Jail") has sued defendant Nick Theofanopoulos, a Cook County Correctional Officer under 42 U.S.C. § 1983 alleging that defendant was deliberately indifferent to plaintiff's safety by failing to intervene when plaintiff was assaulted by another detainee. Defendant has moved for summary judgment under Fed. R. Civ. P. 56. For the reasons described below, defendant's motion is granted.

### FACTS[1]

Plaintiff was housed in Division 10 Tier 3C of the Jail. Sometime around 1:00 a.m. on April 27, 2010, plaintiff and his cell mate, Robert Edwards ("Edwards") argued. After the argument both went to sleep.

When plaintiff awoke the following morning, Edwards was already out of his cell. Plaintiff left his cell when the Tier 3C detainees went to the gym for recreation. After an hour at the gym they returned to the "dayroom." Upon returning to the dayroom, plaintiff was called by a few detainees into the "alley," an area adjacent to the dayroom where the bathrooms and

---

[1]Unless otherwise indicated, the following facts are undisputed.

showers are located. In the alley, Edwards attacked plaintiff, hitting him in the face. Plaintiff shoved Edwards over the half-wall separating the alley from the showers, and the fight was broken up by other detainees. Plaintiff was walked back toward the dayroom by another inmate who was telling him it was over. That whole incident concluded in a matter of seconds.

Less than a minute later Edwards rushed plaintiff and attacked him again, and they began fighting in the dayroom. Numerous other detainees, members of rival gangs, also began fighting, resulting in a riot. During the riot, Edwards and other detainees used homemade weapons, and plaintiff was stabbed. His injury required a few stitches to repair.

Defendant was the correctional officer assigned to Tier 3C that morning. He was stationed inside the "bubble," which apparently is a clear window outside of the dayroom that allows him to see inside. Defendant saw the fight in the alley as well as the fight and riot in the dayroom. He testified in his deposition that he called a "10-10"[2] when he saw the first fight in the alley, but his "narrative of events" on his incident report makes reference to only the 10-10 call he made at the start of the riot. The incident report makes no reference at all to the fight in the alley. Sometime after defendant made the 10-10 call at the start of the riot, Chief Howell and other officers arrived and helped defendant stop the fight. Plaintiff testified that the riot lasted about 10 to 15 minutes, during which time he ran to the door by the bubble and yelled for defendant to let him out.

---

[2]A 10-10 is a call made when there is inmate-on-inmate fighting and is intended to summon supervisors and officers to the tier to provide backup and assistance.

2

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant has the initial burden of pointing out the absence of a genuine issue of material fact. Once the movant has met that burden, the non-moving party must go beyond the pleadings and present specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Plaintiff claims that defendant knew he was in danger but failed to prevent him from assault. Demonstrating deliberate indifference toward a detainee's safety requires a showing that the detainee was incarcerated under conditions posing a substantial risk of serious harm, and that an individual prison official had subjective knowledge, which he personally disregarded. Farmer v. Brennan, 511 U.S. 825, 834-37 (1994). Proving that an officer was deliberately indifferent to the safety of a detainee requires "more than a showing of negligence or even grossly negligent behavior." The officer must act "with the equivalent of criminal recklessness." Fisher v. Lovejoy, 414 F.3d 659, 662 (7th Cir. 2005).

In the instant case, there is simply no evidence to suggest, let alone demonstrate, that defendant acted with deliberate indifference. First, there is no evidence that before the initial attack in the alley plaintiff had told defendant or any official that he was having a problem with Edwards. Nor is there any evidence that defendant was otherwise aware of a problem between the two detainees prior to the initial attack.

Plaintiff attempts to create a trialable issue by pointing out that defendant stated in his deposition that he made a total of three 10-10 calls, the first coming immediately after the fight in the alley, while defendant's incident report indicates only one 10-10 call, made at the start of the riot in the dayroom. This, according to plaintiff, creates an issue as to defendant's credibility that should be decided by a jury, particularly because a failure to intervene upon witnessing an inmate-on-inmate assault can constitute "quintessential deliberate indifference." Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008).

Plaintiff argues that once seeing the fight in the alley defendant was aware of substantial risk of serious injury to plaintiff. But plaintiff's own testimony is that the riot broke out less than a minute thereafter. It is undisputed that defendant called a 10-10 at that point. There is nothing more he could do. "There is no doubt that jail officials have a duty to protect detainees `from violence at the and of other inmates.'" Grieveson, 538 F.3d at 777 (emphasis in original) (quoting Borello v. Allison, 446 F.3d 742, 747 (7th Cir. 2006)). "But liability of a jail officer for failure to protect an inmate only materializes if the officer knew the inmate faced a `substantial risk of serious harm' and `disregarded that risk by failing to take measures to abate it.'" Id. (emphasis in original) (quoting Farmer, 511 U.S. at 847).

4

In the instant case, it is immaterial whether defendant called a 10-10 immediately upon seeing plaintiff and Edwards fight in the alley because the riot started so quickly thereafter. There was nothing defendant could have done to prevent the start of the second fight that started the riot. Thus, whether defendant made one 10-10 call or three is immaterial. According to the undisputed facts, there was no point in time where defendant was aware of a danger to plaintiff from Edwards that he deliberately ignored. Therefore, plaintiff cannot establish that by not calling a 10-10 after the first fight defendant acted with deliberate indifference to plaintiff's safety. Accordingly, defendant is entitled to summary judgment.

## **CONCLUSION**

For the reasons stated above, defendant Theofanopoulos' motion for summary judgment is granted.[3]

**ENTER:** May 23, 2012

_____
**Robert W. Gettleman**
**United States District Judge**

---

[3] The court expresses its appreciation to attorney Brian Olszewski for his excellent representation of plaintiff pursuant to appointment by the court.

5